UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

In re Request from Switzerland Pursuant to       March 23, 2010
the Treaty Between the United States
of America and the Swiss Confederation      No. _____
on Mutual Assistance in Criminal Matters

<u>**EX PARTE**</u>

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER**

The United States is seeking an Order appointing a Commissioner to collect evidence requested by Switzerland in its attached Treaty Request made pursuant to the Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters, U.S.-Switz., May 25, 1973, 27 U.S.T. 2019 ("the Treaty"), and 18 U.S.C. § 3512. A treaty constitutes the law of the land. U.S. Const. art. VI. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. *Asakura v. City of Seattle*, 265 U.S. 332, 341 (1924); *United States v. The Peggy*, 5 U.S. 103 (1801). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. *Zschernig v. Miller*, 389 U.S. 429, 440-41 (1968); *United States v. Erato*, 2 F.3d 11, 15-16 (2d Cir. 1993).

**A. <u>The Treaty</u>**

The United States and Switzerland entered into the Treaty for the purpose of promoting mutual legal cooperation in criminal matters. The Treaty obliges each state to provide assistance to the other in investigations of offenses covered under the Treaty and in court proceedings related to such offenses. Article 1(1). The assistance includes interviews and depositions of witnesses, production of documents and other things, but is not limited to such matters. Article 1(4); *Barr v. U.S. Dep't of Justice*, 645 F. Supp. 235, 237 (E.D.N.Y. 1986) (holding that Treaty covered U.S. request that Swiss government freeze assets), *aff'd*, 819 F.2d 25 (2d Cir. 1987).

The Treaty empowers federal district courts to execute Swiss requests in order to comply with the treaty obligations of the United States.  Article 31(2) provides that a court has "all of the jurisdiction, authority and power in executing the request which it has in investigations or proceedings with respect to an offense committed within its jurisdiction."  The Treaty also requires that federal district courts use their power to execute Swiss requests.  Article 9(3) provides that: "The appropriate judicial officers and other officials in each of the two States shall, by all legal means within their power, assist in the execution of requests from the other State."  The Treaty also contemplates that federal district courts will use compulsory measures to execute Swiss requests. Article 10(1).  The Treaty requires the use of compulsory measures where, as provided by Article 4(2),

> . . . the acts described in the request contain the elements, other than intent or negligence, of an offense . . . which would be punishable under the law in the requested State if committed within its jurisdiction and is listed in the Schedule [Offenses for Which Compulsory Measures Are Available].

The acts described in the Swiss request, summarized below, contain the elements of an offense which, if committed in the United States, would be punishable under American law.  The offense is listed in the Treaty Schedule under items 16 (embezzlement), 19(a) (fraud) and 23(a) (forgery). The provisions of Article 2(1), which limit the application of the Treaty, are inapplicable to this request.

## B.  <u>Use of the Treaty to Execute Requests for Assistance</u>

The Treaty is self-executing and requires no implementing legislation. *See* Letter of Submittal of Treaty to the President from the Department of State, February 5, 1976.  Even so, it contains little in the way of a procedural framework for executing requests.  Instead, it relies on the law of each

2

state to establish procedures for executing requests in that state.  Article 9(1) provides that:

> Except as otherwise provided in this Treaty, a request shall be executed in accordance with the usual procedure under the laws applicable for investigations or proceedings in the requested State with respect to offenses committed within its jurisdiction.

**1.     Courts have authority to appoint Assistant United States Attorneys as "commissioners" authorized to issue subpoenas pursuant to foreign requests for assistance in criminal investigations and prosecutions, under 18 U.S.C. § 3512**

Traditionally, federal courts routinely utilized a "commission" procedure under the general framework of 28 U.S.C. § 1782, which generally governs the provision of assistance for foreign judicial proceedings.  Section 1782 provides in pertinent part:

> The district court . . .  may direct that the testimony or statement [of a person who resides or is found within the district] be given or the document or other thing be produced, before a person appointed by the court.

A district court would appoint a "commissioner" – in criminal cases, typically an Assistant United States Attorney – to collect evidence on behalf of the court and to submit the evidence to the requesting foreign court or authority.  However, a court also may commission a foreign authority together with (or in lieu of) an Assistant United States Attorney.  *See, e.g., In re Letter of Request from the Supreme Court of Hong Kong*, 138 F.R.D. 27, 29 (S.D.N.Y. 1991) (hereinafter *Hong Kong*). Application to a district court for appointment of a commissioner to execute a foreign request for judicial assistance has been handled *ex parte. In re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 688 (D.C. Cir. 1989); *In re Letters Rogatory from the Tokyo District*, 539 F.2d 1216, 1219 (9th Cir. 1976).

This traditional procedure, under the general rubric of § 1782, has recently been codified in the criminal context.  On October 19, 2009, President Obama signed into law the "Foreign Evidence

3

Request Efficiency Act of 2009," Pub. L. No. 111-079, which was codified at 18 U.S.C. § 3512. This new statute governs the execution of foreign requests for evidence in criminal cases. Section 3512(a)(1) provides that

> [u]pon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

Such orders may include the issuance of search warrants (Fed. R. Crim. P. 41), orders for the contents of stored wire or electronic communications and related records (18 U.S.C. § 2703), pen registers and trap and trace devices (18 U.S.C. § 3123), or "an order requiring the appearance of a person for the purpose of providing testimony or a statement, or requiring the production of documents or other things, or both." 18 U.S.C. § 3512(a)(2).

Section 3512(b) codifies the traditional procedure of having a court appoint a commissioner, who in turn may issue orders requiring the appearance of a person to testify under oath or the production of things. This procedure effectively implements the United States' treaty obligation under Article 31(3), which calls upon a court to, "when necessary, issue a procedural document . . . to require the attendance and statement or testimony of persons, or the production or preservation of documents, records or articles of evidence."

    **2.**    **Because the Treaty requires the use of compulsory process comparable to that in domestic criminal investigations, no notice of evidence-taking is required.**

Article 10(1) requires a use of compulsory process in the execution of Swiss requests comparable or similar to that in domestic criminal investigations or prosecutions:

A person whose testimony or statement is requested under this Treaty shall be compelled to appear, testify and produce documents, records and articles of evidence in the same manner and to the same extent as in criminal investigations or proceedings in the requested State.

Inasmuch as grand jury and criminal trial subpoenas are issued without notice to other than the recipients (i.e., no notice to targets, defendants, or third parties), commissioner subpoenas issued in execution of Swiss requests likewise should require no notice to other than the recipients. Article 36 requires notice to a suspect or defendant who resides in the requested State only "if the municipal law in the requesting State generally or for admissibility of evidence so requires, and that State so requests." Here, neither condition of Article 36 has been triggered. There is no indication that a suspect or defendant resides in the United States (the requested State), and Switzerland has not in any event requested such notification. Accordingly, a district court should authorize a commissioner to collect the evidence requested without notice to any party other than the recipient of the commissioner's subpoena except to the extent that a Swiss request asks for specific notice procedures.[1]

## C.   The Present Request

Examining Magistrate Hasler of the Canton of St. Gallen, Switzerland, is currently

---

[1] Historically, United States authorities have executed requests for judicial assistance in criminal matters without notification to actual or potential targets of investigations, or even to parties in proceedings, in order to protect against compromising foreign investigations and proceedings. Moreover, United States authorities customarily rely on the requesting courts and authorities to provide such notice directly to the relevant parties as foreign law requires. Finally, requesting courts and authorities routinely request that United States executing authorities follow particular, stated notice procedures when such procedures are necessary or useful under the foreign law or practice. For example, foreign requests frequently ask (1) that a person to be interviewed (generally a defendant or suspect) be given notice of applicable testimonial privileges (e.g., against self-incrimination) at the time of the interview and (2) that a defendant and defense counsel be permitted to be present during the taking of testimony of a witness and be given sufficient notice to make arrangements.

5

conducting an investigation of Sven Willi Niklaus who is suspected of fraud and document forgery, in violation of Articles 138 (Peculation), 158 (Management Fraud), and 251 (Forgery of Documents) of the Swiss Penal Code. Pursuant to this ongoing investigation, the Examining Magistrate has requested assistance from the United States in obtaining any and all records associated with the names **E-Brokerline.com AG** and/or **Sven Willi Niklaus**.

Accordingly, to execute this request, the government moves this Court to issue the attached Order appointing the undersigned Assistant United States Attorney as Commissioner, authorizing the undersigned to take the actions necessary, including the issuance of Commissioner's subpoenas, to obtain the evidence requested, and to adopt such procedures in receipt of the evidence as are consistent with the intended use thereof in Switzerland.

Respectfully submitted,

NORA R. DANNEHY
UNITED STATES ATTORNEY

/s/

William J. Nardini
Assistant United States Attorney
Federal Bar No. CT16012
157 Church Street, 23rd Floor
New Haven, CT  06510
Tel.: (203) 821-3748
Fax: (203) 773-5377
william.nardini@usdoj.gov